OPINION OF THE COURT
Jones, J.
We conclude that, without a prior adjudication as to the beneficial (as distinguished from the record) ownership of the outstanding shares, it is inappropriate in this case to determine the application of the rule that, in issuing authorized *563 but theretofore unissued shares of stock, corporate directors have a fiduciary responsibility to treat all their shareholders fairly and evenly. The courts below appear to have proceeded to a determination on the basis of the distribution of outstanding shares as reflected on the books of the corporation, while explicitly recognizing that beneficial ownership of those shares remains to be determined elsewhere. An adjudication of the rights of the parties cannot now be predicated on any such basis.
An outline of the background of the present litigation, intentionally skeletal because factual issues remain to be determined, is necessary to an understanding of the disposition we make of this appeal. The assets which gave rise to the present controversy had their origin, at least in major part, in the estate of Camille Duraffourd who died in Lebanon on November 11, 1941, leaving him surviving his wife, Galine Duraffourd, his daughter Yolande Duraffourd (now Buckley) and George S. Ojarovsky, his wife’s son by a prior marriage. Under Camille Duraffourd’s will his wife was named universal legatee and his estate was divided so that she was to receive one half of the estate as a "usufruct” for life. It appears that under French and Lebanese law, a usufruct is the right to use a portion of an estate and to invest it, and that Galine Duraffourd as usufructuary was entitled to all income and as well to all growth of capital of her half of the estate. The mother was also legal guardian of the daughter’s other one-half share of the estate until the daughter’s majority, and it appears that during the daughter’s minority the mother was entitled under French and Lebanese law to use any profit or gain as her own so long as she provided for the health, welfare and education of her ward. After the daughter reached her majority in 1951, her mother continued to manage the daughter’s properties under a power of attorney executed by the daughter.
At its inception in 1941 the Camille Duraffourd estate consisted of gold and cash valued at approximately 1,800,000 Lebanese pounds (roughly $600,000). From 1941 to 1971, Ga-line Duraffourd engaged in numerous financial and business adventures, making considerable profits. The great majority of these assets were placed in the name of her daughter although there was no requirement under French Civil Law that the mother do this.
In 1958 Galine Duraffourd became interested in investing in *564 real estate in the United States. A limited partnership and two corporations were formed as investment vehicles. In 1965 the limited partnership was converted into Wild Oaks Park, Inc., a New York corporation with an authorized capital of 5,000 shares of no-par common stock, for the purpose of acquiring, developing and reselling real estate. There were issued 3,850 shares — 2,316 in the name of the daughter and her husband, 316 in the name of Galine Duraffourd and her trust, 936 in the name of George Ojarovsky and his wife, and 282 to other shareholders. The board of directors of the corporation has always consisted of George Ojarovsky and his wife, Felicia, and Frederick H. Seacord, an attorney. The funds which the corporation received over the years as investment capital had always come from Galine Duraffourd.
In 1971 differences arose between mother and daughter, and the latter revoked the power of attorney which she had given her mother. In December, 1971, for what the trial court found was a valid business reason, the board of directors decided to issue some or all of the remaining 1,150 shares of authorized but unissued stock. After declaring a waiting period in which it was hoped that there might be a reconciliation of the differences between mother and daughter, on June 7, 1972 the board of directors issued all 1,150 shares to the mother. As a result, whereas prior to this stock issue the daughter and her husband had been owners of record of 60% of the outstanding corporate shares, after the additional shares had been issued to the mother, the holdings of the daughter and her husband were reduced to 46%; thus the Buckley interests no longer held control. It was the issuance of the additional 1,150 shares to the mother and the re-election of the directors then in office based on the votes of the new shareholdings which gave rise to the present proceeding.
The trial court, in its dismissal of the daughter’s petition to set aside the election of directors and the issuance of the 1,150 shares, expressly stated: "It should be noted that the court does not make a finding as to the propriety of Madame Duraffourd’s actions in the manner of handling the estate. * * * At this time, whether the funds came from the corpus or income of the usufruct is immaterial; that issue will have to be resolved in the future by the Lebanese courts.” In other words, both the trial court and the Appellate Division (the majority of which affirmed on the opinion of the trial court) disposed of the claims of the parties without making a judicial *565 inquiry into the ownership of the funds which were transferred to the corporation or determining beneficial ownership as between mother and daughter of the corporate shares.
Both appellants and respondents devote extensive attention in their briefs and on oral argument to our holding in Schwartz v Marien (37 NY2d 487). Appellants argue that the doctrine recognized in that case mandates a reversal; respondents contend that the disposition below was not in conflict with Schwartz. All the litigants recognize and concede that the "members of a corporate board of directors * * * owe a fiduciary responsibility to the shareholders in general and to individual shareholders in particular to treat all shareholders fairly and evenly” (Schwartz v Marien, 37 NY2d 487, 491, supra). Their differences arise over the precise formulation of the doctrine and more particularly over its application to the factual situation disclosed in this record.
As with other fiduciary responsibility recognized by our courts, the origins of the presently pertinent doctrine stem from the equity side. (See 11 Fletcher, Cyclopedia Corporations, § 5135.1.) It is equitable concepts which both give rise to the responsibility and thus describe its boundaries and determine its application. In this circumstance we conclude, therefore, that it is inappropriate to consider the scope or application in this case of what is inherently an equitable doctrine without first determining the equitable ownership, of the outstanding shares of stock on which to predicate our decision. Thus, different results might attend an adjudication that record ownership accurately reflected beneficial ownership than would result from a contrary conclusion that the daughter was a bare legal title-holding nominee for her mother’s benefit, or that the daughter was the beneficial owner of substantially all the corporate shares. Intermediate conclusions might call for varying judicial consequences. To phrase it another way, a determination as to the underlying beneficial interests of the parties is necessary to an enforcement of their rights with respect to the corporation. (Cf. Matter of Utica Fire Alarm Tel. Co., 115 App Div 821, under former General Corporation Law, § 27, L 1892, ch 687.) Should it be determined that the daughter was the beneficial owner (as well as the record owner) of a majority interest in the corporation prior to the issuance of the new shares, and that the result of the issuance of the additional shares was to deprive *566 her of control of the corporation, the application of the principles enunciated in Schwartz would be appropriate.
The present is a special proceeding instituted under section 619 of the Business Corporation Law. Under section 25 of the former General Corporation Law, the predecessor of the present section, it was held that the clause, "as justice may require”, did not expand judicial authority or authorize the courts to grant different or greater relief than was specified in the statute, namely, to confirm an election or to order a new one (Matter of Faehndrich, 2 NY2d 468, 474). The new section, however, grants the courts a somewhat broader authority and discretion to "take such other action as justice may require” (Matter of Crass v Budd Pub., 28 AD2d 1100; Hornstein, Analysis of Business Corporation Law, McKinney’s Cons Laws of NY, Book 6, Part 2, Business Corporation Law, p 483; Henn, Outline of Principal Changes in Business Corporation Law, McKinney’s Cons Laws of NY, Book 6, Part 2, Business Corporation Law, p 495).
Choosing to exercise the authority granted under section 619, we remit this case to Supreme Court for a determination of the beneficial ownership of the parties in the shares of stock of Wild Oaks Park, Inc. Presumably this will entail consideration of relevant claims with respect to the administration of the assets of the Camille Duraffourd estate which may be traced into the consideration given for the issuance of the corporate shares, together with attention to be given to the effect properly to be accorded inter vivos transfers, if any, by one or other of the beneficiaries of the estate after receipt of estate distributions. There may be other aspects pertinent to the resolution of the issues of beneficial ownership. We are encouraged to the disposition we make by the circumstances that all interested persons appear presently to be parties to this proceeding and that the inference is available that with the assistance of their accountant the parties have maintained careful records of the various relevant transactions. We are not unaware that the attempts of the parties to obtain in Lebanese courts what Anglo-Saxon law terms an accounting of the administration of the Camille Duraffourd estate have so far been frustrated and that, given the present tensions and uncertainties of the Middle East, there is no reasonable prospect thereof in the near future. The lack of access to what would normally be the appropriate forum for a judicial settlement of the Camille Duraffourd estate should not be permitted *567 to forestall or delay the determination of the beneficial ownership in the shares of Wild Oaks Park, Inc. Only after an adjudication of the issues of beneficial ownership can the court then proceed to a resolution of the ultimate issues tendered in this proceeding.
For the reasons stated, the order of the Appellate Division should be reversed, without costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.